IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARK A. MILLER,

                        Plaintiff,                                OPINION AND ORDER

  v.

                                                                         12-cv-00635-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

---

      Plaintiff Mark A. Miller seeks judicial review of a decision by the Commissioner of the Social Security Administration denying his application for Social Security Disability Insurance Benefits and Supplemental Security Income. Miller contends that the Administrative Law Judge ("ALJ") erred in failing to give proper weight to the opinion of one of Miller's treating physician. For the reasons set forth below, the case will be remanded to the Commissioner for rehearing.

FACTS

**A. Procedural History**

      On January 19, 2010, Miller filed claims for Social Security Disability and Supplemental Security Income. (AR 154-62, 163-66). He alleged an onset date of disability of December 31, 1997. These claims were denied initially on February 22, 2010, and again upon reconsideration on June 29, 2010. (AR 87-90, 91-4; 98-101-102-05). On July 7, 2010, Miller filed a timely request for hearing. (AR 106-08). A hearing

was held before the ALJ Virginia Kuhn on May 10, 2011. (AR 35-82). On May 24, 2011, Miller's claims received an unfavorable hearing decision. (AR 10-29). On June 29, 2012, the Appeals Council denied his request for review, thereby making the ALJ's decision the final decision of the Commissioner.[1] (AR 1-5).

### B. Miller's Work History, Injury and Application for Benefits

Miller's past work history included work as a general laborer (mainly inspecting telephone-lines). (AR 23). Due to his impairments, he was ultimately unable to continue this work. At age 39, he filed his disability claim on January 19, 2010. (AR 154-62).

Miller suffers from hypertension, chronic headaches, agoraphobia, anxiety, depression and panic attacks. (AR 280-81, 289, 309, 439). He testified his blood pressure was always high, even with his current medical regimen. (AR 45). He added he was on lorazepam and clonazepam for mental health. (AR 46). He noted that these medications seriously interfere with his memory. (AR 46-7). He also suffers from nausea and blurry vision due to side effects of the medication, which appear to be secondary symptoms to his headaches. (AR 47).

When Miller first started having headaches in 1994 or 1995, he thought he had a brain tumor, but an MRI was negative. (AR 48). He explained his headaches and sinus

---

[1] The Appeals Council's affirmance of the ALJ's decision constitutes the final decision of the Commissioner of Social Security. *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008).

problems cause his ears to pop on a regular basis. (AR 50). He stated he took Benedryl to assist with sleep. (AR 51). He added that he naps four to five times a week, in addition to his nightly sleep (approximately 12 hours). (AR 52).

Miller also testified that he suffered from anxiety and agoraphobia. (AR 52). He explained he has trouble going out of his house. (AR 52). He explained that his last panic attack occurred while traveling to his hearing for benefits. (AR 52). Miller explained the onset of a panic attack includes dizziness and a feeling similar to a concussion. (AR 54). He offered a recent example that resulted in his falling down a flight of stairs and breaking his foot due to dizziness. (AR 58). He added his psychotherapist informed him he would not be able to stop them from happening. (AR 53). His panic attacks last anywhere from ten minutes to two hours or longer. (AR 53).

### C. The ALJ's Disability Determination

On May 24, 2011, the ALJ issued a written decision finding that Miller was not disabled under the five-step sequential analysis mandated by the statute. (AR 10). At step one in the analysis, the ALJ found that Miller had not engaged in substantial gainful activity since his alleged onset date, December 31, 1997. At steps two and three, the ALJ found that Miller had severe impairments, including: headaches, hypertension, depression, panic disorder, and alcohol abuse. (AR 12). Despite these impairments, the ALJ further found Miller did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart

P, Appendix 1. (AR 13).

After completing step three, the ALJ took up the question of Miller's residual functional capacity ("RFC") by considering the level of work activities that he could perform on a sustained basis despite the limitations posed by his impairments. After considering the medical records, the ALJ found that Miller retained the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The ALJ further found that:

> [Miller] must have no exposure to heights and/or hazards, including dangerous moving machinery and general workplace safety hazards. He is limited to unskilled, routine and repetitive tasks, which means tasks consistent from day to day, with minimal, if any, workplace changes. He is precluded from tasks requiring direct interaction with the public. He is limited to tasks performed primarily by the individual without requiring teamwork or collaboration with coworkers

Relying on the vocational expert's testimony at step four, the ALJ found that while Miller was not able to perform his past work, there were jobs in significant numbers in the national economy that Miller could perform. (AR 23-24.) The Appeals Council denied Miller's request of the ALJ's decision on June 29, 2012.

Miller then filed a timely complaint for judicial review in this court pursuant to 42 U.S.C. §405(g).

## OPINION

Miller contends that the ALJ erred in failing to give proper weight to the medical opinion of Miller's treating physician. Bound within this issue is whether the ALJ

4

adequately built an accurate and logical bridge between this medical opinion and her conclusion that Miller is not disabled under the statute.

As a starting point, the Seventh Circuit has repeatedly addressed the appropriate standards that the Commissioner must follow when weighing the opinions of a treating physician.[2] In *Jelinek v. Astrue*, 662 F.3d 805 (7th Cir. 2011), the court explained that if a treating physician's opinion "is consistent with the record is generally entitled to 'controlling weight' ... [and] an ALJ who chooses to reject a treating physician's opinion must provide a sound explanation" for doing so. *Id.* at 811 (citing 20 C.F.R. § 404.1527(d)(2)); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Moreover, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the (1) length, nature, and extent of the treatment relationship; (2) frequency of examination; (3) physician's specialty; (4) types of tests performed; and (5) consistency and supportability of the physician's opinion." *Scott v. Astrue*, 647 F.3d 734, (7th Cir. 2011); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).

---

[2] As a more general matter, a federal court reviews an administrative disability determination with deference and will uphold a denial of benefits unless the ALJ's decision is not supported by substantial evidence or is based on an error of law. 42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Where conflicting evidence allows reasonable minds to differ about whether a claimant is disabled, the responsibility for that decision falls on the [C]ommissioner, or the [C]ommissioner's designate, the ALJ." *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) (citation omitted).

In this case, Dr. Eulogio Aguilar, M.D., Miller's treating physician, provided an opinion regarding Miller's medical condition and ability to perform specific work activities. (AR 341-46). Dr. Aguilar opined that Miller has had chronic headaches for ten years. (AR 341). Secondary symptoms from these headaches included vertigo, malaise, photosensitivity, visual disturbances, inability to concentrate and severe pain. (AR 343). Because of these symptoms, Dr. Aguilar opined that Miller could be expected to be absent from work numerous times per month. In discounting portions of that opinion, however, the ALJ stated:

> Dr. Aguilar indicated that the claimant has good days and bad days, and **could be expected to be absent from work more than 4 times per month**. The undersigned gives this assessment **little weight because it does not correlate to any treatment notes or diagnostics performed by the doctor**. However, consistent with the overall medical record, Dr. Aguilar also opined that the claimant is capable of performing low stress jobs, and the undersigned has incorporated that determination into the residual functional capacity.

(AR 26) (emphasis added).

Miller challenges the manner in which this absenteeism opinion was discounted. He first argues that the opinion fails to provide the minimal level of articulation required for meaningful judicial review. *Zurawski*, 245 F.3d at 888. The court agrees that the ALJ's analysis seems far too abbreviated to discount Dr. Aguilar's opinion, particularly as one provided by the treating physician and generally accorded controlling weight.[3] In

---

[3] To be clear, the court does not necessarily fault the ALJ for ultimately discounting some or even all of Dr. Aguilar's opinion. The problem lies with the fact that there is inadequate discussion to

particular, all the ALJ states in purporting to discount Aguilar's opinion is her conclusion that it fails to "correlate to any treatment notes or diagnostics performed by [Dr. Aguilar]." (AR 26). Even this statement is open to question since there is evidence in the record that *does*, at least on first blush, correlate with the pain caused by Miller's headaches that may lead to absent work days, just as Dr. Aguilar suggests. For instance, Dr. Aguilar noted pain upon palpation of the sinus areas in a treatment note from January, 2010. (AR 297). Other notes and objective evidence seem to also bolster Dr. Aguilar's findings. (AR 301-305, 311-315, 440-441). Because this evidence has not been adequately addressed -- and because it *could* have a bearing on the ALJ's conclusion that Miller is not disabled -- the court has little choice but to remand for re-consideration. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

Miller also challenges the ALJ's decision because it only discusses a small portion of Dr. Aguilar's opinion even though the doctor described multiple, secondary symptoms associated with Miller's headaches. Dr. Aguilar explained the factors that exacerbate the headaches, opined on the relationship of emotional factors to the headaches and opined that Miller's headaches were reasonably consistent with the functional limitations set forth in the doctor's evaluation. (AR 341-46). In her RFC analysis, however, the ALJ neither discussed any of the above, nor did she incorporate them into her hypotheticals for the vocational expert.[4] Because of these deficiencies, the court finds that the ALJ's

---

allow for appellate review the basis for doing so.

[4] While the ALJ gives weight to Dr. Aguilar's opinion that the Miller is capable of performing low stress jobs, incorporating this portion of the opinion into the RFC determination, this only

analysis (or lack thereof) constitutes error and remand is required. *See* 20 C.F.R. § 404.1545(a)(1) (stating that the RFC assessment is made by the ALJ "based on all the relevant evidence in [the claimant's] case record"); see also SSR 96–8p.

Relatedly, because the ALJ only discusses a small portion of Dr. Aguilar's opinion, the ALJ has not given a clear indication of the weight that he assigns the opinion overall (despite doing so for the other doctors in the record). Of course, there is the statement that "little weight" was afforded to Dr. Aquilar's absentee finding, but there appears *no* weight assigned to other portions of the opinion. This not only underscores the lack of adequate explanation for the decision, but also contravenes Social Security Ruling 96-2p. That Ruling provides that when a decision is not fully favorable to a claimant, the "decision must be sufficiently specific to make clear to any subsequent reviewers the *weight* the adjudicator gave to the treating source's medical opinion." Here, by only assigning weight to a single sentence of Dr. Aguilar's report (absenteeism), and "little weight" at that, the ALJ's decision is bare-boned and prevents this court from properly reviewing her analysis. This provides further cause for remand.

Finally, because the ALJ does not afford Dr. Aguilar's opinion controlling weight, she was required to examine the factors laid out in 20 C.F.R. § 404.1527(d)(2)-(6) and § 416.927(d)(2)-(6). The ALJ makes tacit reference to these regulations on page 15 of the decision, but the analysis of Dr. Aguilar's opinion that follows several pages later belies it.

---

demonstrates cherry-picking from that opinion to help support the ALJ's finding of non-disability. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence.").

(AR 22). In reviewing the ALJ's analysis, there is no discussion of the *length, nature, and extent* of the treatment relationship. Indeed, no attempt is made to explain how these factors, among others, apply in this case.[5] And what discussion there is of the other factors is only cursory.[6] The court will leave the question of weight, and more detailed analysis of above factors, to the ALJ for further consideration. *See Scott* 647 F.3d 734.

ORDER

IT IS ORDERED that the decision of defendant Carolyn Colvin, Acting Commissioner of Social Security, is REVERSED and the case is REMANDED to the commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 30th day of June, 2014.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge

---

[5] For example, Dr. Aguilar treated Miller over a period of several years, including numerous clinical examinations.

[6] Even the ALJ's discounting of Dr. Aguilar's absenteeism opinion is conclusory at best. Moreover, an earlier treating physician, Dr. Nagle, stated in mid-2006 that Miller should "at least get a part-time manual labor job". (AR 305). On the one hand, this suggests that Miller could engage in some level of work despite his condition; on the other, the evidence arguably corroborates Dr. Aguilar's opinion that Miller could not work full-time (*i.e.*, he would absent from work more than 4 times per month). The ALJ should also reconcile this evidence on remand.